# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

JABRIEL CHASE,                   \*

Plaintiff,                      \*

v.                               \*         Civil Action No. ELH-18-2182

DPSCS, *et al.*,                \*

Defendants.               \*
                                  \*\*\*

## MEMORANDUM OPINION

Plaintiff Jabriel Chase, a self-represented inmate presently incarcerated at Western Correctional Institution ("WCI") in Cumberland, Maryland, filed this civil rights action under 42 U.S.C. § 1983. ECF 1. He subsequently supplemented (ECF 3) and amended (ECF 6) his Complaint, naming the following defendants: the Maryland Department of Public Safety and Correctional Services ("DPSCS"); Wexford Health Sources, Inc.[1] ("Wexford"); WCI Warden Richard Graham; WCI Security Chief Bradley Butler; and Fatima Hussein, M.D. Chase alleges that Wexford and Dr. Hussein failed to treat his ankle injury properly and in a timely manner, resulting in disfigurement, and that DPSCS, Graham, and Butler (collectively, "Correctional Defendants") subjected him to discrimination. ECF 3 at 2, 4-5. He seeks $5 million in monetary damages from the correctional defendants and $5 million from Wexford and Dr. Hussein. *Id.* at 3.

Wexford filed a motion to dismiss or, alternatively, for summary judgment, pursuant to Federal Rules of Civil Procedure 12(b) and 56. ECF 23. It is supported by a memorandum (ECF 23-1) (collectively, "Wexford Motion") and several exhibits. The Correctional Defendants also

---

[1] The Clerk shall be directed to amend the docket to reflect the correct name of Wexford Health Sources, Inc.

filed a dispositive motion (ECF 25), supported by a memorandum (ECF 25-1) (collectively, Correctional Motion) and exhibits. And, Dr. Hussein filed a dispositive motion (ECF 36), supported by a memorandum (ECF 36-1) (collectively, "Hussein Motion") and an exhibit.

Chase filed a response in opposition to defendants' motions (ECF 38), which he supplemented (ECF 39), supported by a Declaration. ECF 39-1. Defendants Wexford and Dr. Hussein filed replies. ECF 40; ECF 41; ECF 42.[2]

No hearing is necessary to resolve the motions. Local Rule 105.6. For the reasons stated below, defendants' dispositive motions shall be denied, without prejudice.

## I.     Factual Background

Chase claims that on April 7, 2018, while he was incarcerated at WCI, he sustained an ankle injury. ECF 3 at 2.[3] He was seen by Wexford's medical staff, who gave him crutches and bandages. *Id.* Chase alleges that the following day, he was taken for an x-ray and was seen by Dr. Hussein, who informed him that his ankle was broken. *Id.* at 2, 4. According to Chase, Dr. Hussein did not give him a cast, boot, or brace, and she told him that he did not need to go to a hospital. *Id.* at 4.

Chase alleges that he was subsequently placed on segregation pending adjustment, where he was housed on the top tier and made to walk up some stairs. *Id.* Chase claims that when he tried to refuse the housing assignment, he was threatened with receiving an adjustment; therefore, he remained in the top tier. *Id.*

Chase was subsequently seen by Roy Carls, M.D., who said that he would order a boot for Chase's ankle. *Id.* However, Chase claims that he never received the boot. *Id.* Approximately

---

[2] Dr. Hussein filed two replies.

[3] All citations reflect their electronic pagination.

10 weeks later, on June 23, 2018, Chase returned for an x-ray and discovered that his ankle was disfigured, as it did not heal properly as a result of not receiving a cast, boot, or ankle brace. *Id.* The following day, on June 24, 2018, Chase was seen by Janette Clark, NP, who stated that she would order a brace. *Id.* Chase claims that when he asked why he had not received a boot yet, he was told that he was not permitted to have one while being housed on segregation status. *Id.* at 5. He states that he received an ankle support on July 11, 2018. *Id.*

Defendants do not dispute that Chase suffered a left ankle injury on April 7, 2018, following an altercation with other inmates. Wexford Motion, ECF 23-1 at 3. After the incident, Chase was brought to the medical department, where Asresahegn Getachew, M.D. observed that Chase's ankle appeared swollen and tender. Medical Records, ECF 23-3 at 3. Dr. Getachew wrapped the ankle with an ace bandage for support, gave Chase crutches, and provided Motrin for discomfort. *Id.*

The next morning, on April 8, 2018, Chase was brought back to the medical department, at which time Beverly McLaughlin, RNP observed additional bruising, redness, and swelling of the left ankle. *Id.* at 5. McLaughlin scheduled an x-ray for the next day and splinted and wrapped Chase's ankle for immobilization. *Id.*

On April 10, 2018, Chase received an x-ray of the injured ankle. ECF 23-4 at 2. The x-rays revealed an "acute fracture involving lateral malleolus and distal fibula with minimal displacement" and an "[a]cute avulsion fracture involving the posterior malleolus of distal tibia." *Id.* There was "no evidence of joint subluxation or dislocation." *Id.* That same day, Chase was seen by Dr. Hussein, who noted that the swelling had improved but the ankle remained tender. ECF 23-3 at 7. Dr. Hussein replaced the splint and wrap, gave Chase crutches, referred him for a

consultation with an orthopedic specialist, and recommended a wheelchair for long distances. ECF 23-3 at 7-8.

On April 20, 2018, Chase was seen by Dr. Carls, an orthopedic specialist. *Id.* at 9. Chase alleges that he was seen by Dr. Carls "only after [his] family called the medical director." ECF 39 at 7. Dr. Carls indicated that Chase's ankle was mildly painful and no longer splinted because plaintiff "was not allowed to get this splint wet." ECF 23-3 at 9. Dr. Carls also noted that Chase would be able to bear weight on the ankle "as long as he is in a boot such as a fracture boot." *Id.* Dr. Carls recommended a follow up a month later with additional x-rays of the ankle. *Id.* There is nothing in the record to indicate that a boot was ordered at this time, however.

On May 4, 2018, Chase was by NP Clark. *Id.* at 10. At that time, Clark discussed the orthopedic visit, noting that Chase had a "[n]on displaced left fibular fracture" and that it had been recommended that he wear a boot." *Id.* In response to Dr. Carls' orders and her clinical exam, Clark requested a follow up with orthopedics and scheduled another x-ray of the ankle for May 21, 2018. *Id.* at 12.

Chase received a follow up x-ray of his ankle on May 21, 2018, which again indicated an "[a]cute avulsion fracture involving the dorsal aspect of the distal end of the tibia." ECF 23-4 at 3. Again, there was no evidence of joint dislocation or subluxation. *Id.* Moreover, the joint mortise was preserved, and the ankle maintained an anatomical alignment. *Id.*

On June 6, June 14, and June 19, 2018, Chase filed sick call requests complaining of continued ankle pain. Sick Call Requests, ECF 23-6 at 2-4. Chase indicated that his ankle had not yet been reset and that he had not received a boot. *Id.* Thereafter, Chase was sent for another x-ray on June 22, 2018. ECF 23-4 at 5. That x-ray revealed that there was "[s]ubluxation with

increased distance between the medial malleolus and the talus" and "no definite visible acute fracture." *Id.*

On June 23, 2018, Chase was seen by RNP McLaughlin, who noted that Chase was experiencing pain and that the orthopedist "suggested" the use of a boot, but that the boot had not been received. ECF 23-3 at 13. McLaughlin also noted that Chase was "seen by another provider last month, who placed ortho f/u/ consult, no decision in ephr for review, so sent to offsite scheduler for answer from collegial." *Id.* McLaughlin stated that "according to previous provider left boot was ordered via nan-form," but she would also send an email. *Id.* McLaughlin submitted a request for evaluation and treatment by an outside provider. *Id.* at 13-14. In the interim, McLaughlin requested the nursing department to "assess [patient] on tier for needs of assistant device to help him for now," and she prescribed 50 mg of Tramadol. *Id.* at 13.

Chase was brought back to the medical unit the following day, on June 24, 2018, for a scheduled visit with NP Clark. *Id.* at 15. Clark noted that Chase was seen by orthopedics on April 20, 2018, who "[r]ecommended wearing boot," but Chase "ha[d] not received brace." *Id.* Clark observed that there was "[m]oderate swelling over medial aspect of left ankle with obvious bony deformity. He is limping. Painful to palpitation." *Id.* Clark noted that his "Referral to provider 1 wk review xray/track fx" had been ordered. *Id.*

On July 2, 2018, Chase submitted a request for administrative remedy ("ARP"), complaining about the medical treatment he received for the ankle injury. ECF 25-2 at 12-13. He indicated that medical providers explained that his left ankle healed improperly and needed to be reset. *Id.* An investigation determined that his claim was meritorious because medical providers failed to order medical supplies in a timely manner. *Id.*

On July 12, 2018, Chase was given a gel ankle support. ECF 23-3 at 18. Chase was seen again on July 21 and July 22, 2018, in follow up to sick call requests. *Id.* at 19-21. During the visit on July 22, RNP McLaughlin discussed the latest x-ray results and offered to provide "[wheelchair] and bottom bunk and bottom tier for 2 months." *Id.* at 20. According to the Correctional Defendants, however, "[n]o medical orders provided for housing him on a bottom tier nor for the use of a wheelchair other than for long distances." ECF 25-1 at 3. McLaughlin advised Chase to keep the ankle "elevated while laying down and take motrin with food or milk for pain," and to "[follow up] if new or worsening current conditions." ECF 23-3 at 57. Chase was advised that he would see the orthopedist at the end of the month. *Id.*

Chase was scheduled for an orthopedic consultation on August 8, 2018. However, Dr. Carls had an emergency and was not able to see him. *Id.* at 22. Instead, RNP McLaughlin reevaluated Chase and noted he was "doing better with ambulation" but "does have swollen medial malleolus." *Id.* During that visit, Chase informed McLaughlin that he did not receive a copy of the request for bottom tier, bottom bunk, and wheelchair; therefore, McLaughlin asked medical to resend it. McLaughlin also advised Chase about his medication adjustment and informed him that his visit with Dr. Carls would be rescheduled. *Id.*

Chase saw Dr. Carls on August 24, 2018. *Id.* at 24. After reviewing Chase's x-rays of June 22, 2018, Dr. Carls determined that Chase had a "chronic injury of the left ankle that includes shortening of the fibula, a lateral shift of the mortise, and, likely deltoid incompetency." *Id.* Dr. Carls and Chase discussed corrective surgery and that, "at best, [surgery] will give him about a 50% chance for a good functioning ankle." *Id.* Dr. Carls discussed the need to reconstruct the fibular, lengthening it by using a bone graft. *Id.* Chase indicated to Dr. Carls that he would like to attempt the ankle surgery, despite the risks. *Id.*

After two sick calls in early September regarding plaintiff's pain medication, ECF 23-6 at 11-12, Chase was brought for a follow up visit on September 10, 2018. ECF 23-3 at 25. Chase complained that he was in constant pain and that "[n]othing he does helps with pain." ECF 23-3 at 25. According to the Consultation Notes, it was during this visit that the pain medication for Chase's ankle was considered to be failing and "[l]ocal outpatient ankle repair w/ Dr. Carls" was requested. ECF 23-7 at 6. Chase was seen again on October 20, 2018, in follow up to additional complaints about pain and his medication. ECF 23-3 at 31.

In his response to the dispositive motions, Chase states that he did not "receive consistent monitoring and/or medical attention as the injury progressed, which resulted in reconstructive surgery of the ankle (fibula) on January 11, 2019." ECF 38 at 2. In addition, he stated that discovery is "essential" in the case. *Id.* at 3. Moreover, he has filed a Rule 56(d) Declaration (ECF 39-1), requesting the opportunity for discovery.

## II.     Standard of Review

Defendants' motions are styled as motions to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see*

*Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 Fed. Appx. 220, 222 (4th Cir. 2016) (per curiam). However, when the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165, 167.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc*., 637 F.3d 435, 448-49 (4th Cir. 2012); *see Putney v. Likin*, 656 Fed. App'x 632, 638 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).

To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). "[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F.Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham*, 437 F.Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008). This is not a case where discovery is unnecessary.

Accordingly, I shall construe the motions under Rule 12(b)(6). Because Chase is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408

(4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Paradise Wire & Cable Defined Benefit Pension Fund Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted). The rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of

action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim for relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 423 (4th Cir. 2018); *Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir.), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Comm'w of Va.*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts generally do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. *Edwards*, 178 F.3d at 243 (quotation marks and citation omitted). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached

by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 533 F.3d 334, 336 (4th Cir. 2009); *see also U.S. ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F.3d 131, 148 (4th Cir. 2014). However, because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis added in *Goodman*).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours*, 637 F.3d at 448). The court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . ." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). But, in limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015).

In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am.*

*Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 455 (7th Cir. 1998)).

A court may also "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 558 (2017); *Oberg*, 745 F.3d at 136; *Kensington Volunteer Fire Dep't. v. Montgomery County*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original). *See also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

### III. Discussion

Chase primarily claims that defendants failed to treat his ankle injury properly and in a timely manner, resulting in disfigurement, additional corrective surgery, and pain and suffering.

### A. Section 1983

Section 1983 of Title 42 of the United States Code provides that a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any

citizen of the United States or other person within the jurisdiction thereof to the deprivation of any

rights, privileges, or immunities secured by the Constitution and laws" of the United States. *See,*

*e.g.*, *Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Graves v. Loi*, 930 F.3d 307, 318-19 (4th Cir.

2019); *Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied,*

135 S. Ct. 1983 (2015). However, § 1983 "'is not itself a source of substantive rights,' but provides

'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266,

271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). In other words, § 1983

allows "a party who has been deprived of a federal right under the color of state law to seek relief."

*City of Monterey v. Del Monte Dunes at Monterey, Ltd*., 526 U.S. 687, 707 (1999).

To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the

Constitution or laws of the United States was violated, and (2) that the alleged violation was

committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48

(1988); *see Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S.

823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins*

*v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997).

Section 1983 also requires a showing of personal fault based upon a defendant's personal

conduct. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual

defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that

the official acted personally to deprive the plaintiff of his rights). In other words, there is no

respondeat superior liability under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because

vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-

official defendant, through the official's own individual actions, has violated the Constitution.");

*see also Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Love-Lane v. Martin*, 355 F.3d 766,

782 (4th Cir. 2004); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

Liability of supervisory officials under § 1983 "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). With respect to a supervisory liability claim in a § 1983 action, a plaintiff must allege:

> (1) That the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to . . . the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted), *cert. denied*, 513 U.S. 813 (1994); *see also Wilcox*, 877 F.3d at 170.

## B. Deliberate Indifference

The Eighth Amendment protects the rights of convicted prisoners. *Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001) ("'[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.'") (quoting *Ingraham v. Wright,* 430 U.S. 651, 671 n.40 (1977)). It prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Hope v. Pelzer*, 536 U.S. 730, 737 (2002); *Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016). And, "[i]t is beyond debate that a 'prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment.'" *Gordon v.*

*Schilling*, ___ F.3d ___, 2019 WL 4179813, at \*6 (4th Cir. Sept. 4, 2019) (citation omitted).

"Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)); accord *Anderson v. Kingsley*, 877 F. 3d 539, 543 (4th Cir. 2017). The protection conferred by the Eighth Amendment imposes on prison officials an affirmative "obligation to take reasonable measures to guarantee the safety of . . . inmates." *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986); *see Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016).

In general, the deliberate indifference standard applies to cases alleging failure to safeguard the inmate's health and safety, including failure to protect inmates from attack, inhumane conditions of confinement, and failure to render medical assistance. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson*, 501 U.S. at 303; *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017). Moreover, "[t]he necessary showing of deliberate indifference can be manifested by prison officials in responding to a prisoner's medical needs in various ways, including intentionally *denying* or *delaying* medical care, or intentionally *interfering* with prescribed medical care." *Formica v. Aylor*, 739 F. App'x 745, 754 (4th Cir. 2018) (emphasis in *Formica*).

The deliberate indifference standard is analyzed under a two-pronged test: "(1) the prisoner must be exposed to 'a substantial risk of serious harm,' and (2) the prison official must know of and disregard that substantial risk to the inmate's health or safety." *Thompson*, 878 F.3d at 97-98 (quoting *Farmer*, 511 U.S. at 834, 837-38); *see Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209 (4th Cir. 2017). The Fourth Circuit has characterized the applicable standard as an "exacting" one. *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).

For a plaintiff prisoner to prevail in a suit alleging the denial of adequate medical care, the

defendant's actions or inaction must amount to deliberate indifference to a serious medical need. *See Estelle*, 429 U.S. at 106; *Lightsey*, 775 F.3d at 178; *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). A "'serious . . . medical need'" is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko*, 535 F.3d at 241 (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)); *see Scinto*, 841 F.3d at 228.

Deliberate indifference to a serious medical need requires proof that, objectively, the plaintiff was suffering from a serious medical need and that, subjectively, the defendant was aware of the need for medical attention but failed either to provide it or to ensure that the needed care was available. *See Farmer*, 511 U.S. at 837; *see also Gordon*, 2019 WL 4179813, at *7; *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018); *King*, 825 F.3d at 219. As the *Heyer* Court put it, "The plaintiff must show that he had serious medical needs, which is an objective inquiry, and that the defendant acted with deliberate indifference to those needs, which is a subjective inquiry." *Heyer*, 849 F.3d at 209-10.

The subjective component of the standard requires a determination as to whether the defendant acted with reckless disregard in the face of a serious medical condition, *i.e.*, with "a sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298; *see Farmer*, 511 U.S. at 839-40; *Scinto*, 841 F.3d at 225. As the *Farmer* Court explained, 511 U.S. at 837, reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." Put another way, "it is not enough that the defendant *should* have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the

official's action or inaction." *Lightsey*, 775 F.3d at 178 (emphasis in *Lightsey*); *see Farmer*, 511 U.S. at 839-40; *Anderson v. Kingsley*, 877 F.3d 539, 544 (4th Cir. 2017).

"Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The Fourth Circuit has said: "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997); *see also Young v. City of Mount Ranier*, 238 F.3d 567, 575-76 (4th Cir. 2001) ("Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care.").

A plaintiff can meet the subjective knowledge requirement through direct evidence of a prison official's actual knowledge. And, the plaintiff can rely on circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer*, 511 U.S. at 842); *see also Gordon*, 2019 WL 4179813, at *7; *Scinto*, 841 F.3d at 225.

Generally, "[a]n actionable deliberate-indifference claim does not require proof that the plaintiff suffered an actual injury. Instead, it is enough that the defendant's actions exposed the plaintiff to a 'substantial *risk* of serious harm.'" *Heyer*, 849 F.3d at 210 (quoting *Farmer*, 511 U.S. at 837) (emphasis added in *Heyer*); *see Thompson*, 878 F.3d at 97-98. But, in a case involving a claim of deliberate indifference to a serious medical need, the inmate must show a "significant

injury." *Danser v. Stansberry*, 772 F.3d 340, 346 n.8 (4th Cir. 2014); *see De'lonta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013).4

The Supreme Court recognized in *Farmer* that "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." 511 U.S. at 844; *accord Brown*, 240 F.3d at 390-91. The Constitution requires prison officials to ensure "reasonable safety," a standard that acknowledges prison officials' "unenviable task of keeping [sometimes] dangerous [people] in safe custody under humane conditions[.]" *Farmer*, 511 U.S. at 845 (citations and quotation marks omitted). Accordingly, "prison officials who act reasonably cannot be found liable" under the deliberate indifference standard. *Id.*; *see also Short v. Smoot*, 436 F.3d 422, 428 (4th Cir. 2006) (finding that an officer who responds reasonably to a danger facing an inmate is not liable under the deliberate indifference standard, even when further precautions could have been taken but were not); *Brown*, 240 F.3d at 390-91.

Notably, deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness" and, "as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Lightsey*, 775 F.3d at 178; *see also Scinto*, 841 F.3d at 225; *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975). In *Estelle*, 429 U.S. at 106, the Supreme Court said: "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."

---

4 The Supreme Court has rejected the "significant injury" requirement in regard to an excessive force claim under the Eighth Amendment. *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010) (per curiam); *see Danser*, 772 F.3d at 346 n.8 (distinguishing deliberate indifference claims).

What the Court said in *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999), *cert. denied,* 529 U.S. 1067, (2000), is also pertinent: "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences . . . ." *See also Young*, 238 F.3d at 576 (stating that a Fourteenth Amendment deliberate inference claim requires more than a showing of "mere negligence"); *Johnson v. Quinones*, 145 F.3d 164, 166 (4th Cir. 1998) ("[A]ny negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference."). Although the deliberate indifference standard "'entails more than mere negligence . . . it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *King*, 825 F.3d at 219 (quoting *Farmer*, 511 U.S. at 835).

Of course, if a risk is obvious, a prison official "cannot hide behind an excuse that he was unaware of a risk." *Brice*, 58 F.3d at 105. But, an inmate's mere disagreement with medical providers as to the proper course of treatment does not support a claim under the deliberate indifference standard. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Wester v. Jones*, 554 F.2d 1285 (4th Cir. 1977). Rather, a prisoner-plaintiff must show that the medical provider failed to make a sincere and reasonable effort to care for the inmate's medical problems. *See Startz v. Cullen*, 468 F.2d 560, 561 (2d Cir. 1972); *Smith v. Mathis*, PJM-08-3302, 2012 WL 253438, at * 4 (D. Md. Jan. 26, 2012), *aff'd*, 475 F. App'x 860 (4th Cir. 2012); *Lopez v. Green*, PJM-09-1942, 2012 WL 1999868, at * 2 (D. Md. June 3, 2012); *Robinson v. W. Md. Health Sys. Corp.*, DKC-10-3223, 2011 WL 2713462, at *4 (D. Md. July 8, 2011). And, the right to medical treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable."

*Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977).

Viewing the evidence in the light most favorable to Chase, I cannot find that defendants are entitled to judgment as a matter of law at this time. Objectively, it appears undisputed that Chase suffered a serious injury to his ankle, which eventually required corrective surgery. Subjectively, defendants recognized that Chase needed an ankle boot as early as April 20, 2018, yet they failed to either provide it or ensure it was available.

Wexford contends that the medical staff opted for conservative treatment. Citing *Jacobs v. Shearin*, Civil Action No. GLR-13-879, 2014 WL 1429316 (D. Md. Apr. 11, 2014), Wexford argues that this court has previously granted summary judgment for medical defendants where a conservative plan of care for an ankle injury was employed. ECF 23-1 at 15-16. But, as noted, the issue here is whether plaintiff has stated a claim of deliberate indifference. And, plaintiff has done so.

In any event, the plan initiated by Wexford and its staff –whether conservative or not— seemed to include the issuance of a boot, wheelchair, or similar assistive device, yet they failed to provide it or assure that it was provided. Several members of the Wexford medical staff also appeared to agree that Chase needed the boot, as they continuously noted or questioned Chase's lack of a boot during his medical visits. Even if I were to consider the evidence, it cuts against Wexford's argument that Chase has failed to establish that he was deprived of adequate medical treatment. *See* ECF 23-1 at 16-17.

Moreover, defendants have not addressed who was responsible for ordering the boot, the process followed by medical staff when a boot is needed, or why it was not provided. And, the Correctional Defendants have failed to address Chase's allegation that medical staff informed him that a boot was not provided because it was banned in his housing unit. In addition, there appears

to be a dispute regarding Chase's request for housing in a bottom bunk on the bottom tier and the use of a wheelchair. The medical staff alleges that they placed the request, but the Correctional Defendants state that no request was received.

In light of the foregoing, defendants' motions shall be denied, without prejudice.[5] Counsel shall be appointed to represent Chase.

### IV.    Conclusion

All defense motions are denied, without prejudice. Counsel shall be appointed to represent Chase. Counsel for Chase may amend the suit, if deemed appropriate, within 30 days of appointment. And, all counsel are directed to submit a proposed Scheduling Order (joint if possible) to govern this case, due within 21 days following the appointment of counsel.

A separate Order follows.


<u>September 17, 2019</u>                                          <u>          /s/          </u>
Date                                                                         Ellen L. Hollander
                                                                             United States District Judge

---

[5] In light of the court's ruling, it is not necessary at this time to address defendants' remaining contentions.