IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JABRIEL CHASE
*Plaintiff*

v.                                                    Civil Action No. ELH-18-2182

DEPARTMENT OF PUBLIC SAFETY AND
CORRECTIONAL SERVICES, *et al*.,
*Defendants.*

## MEMORANDUM OPINION

This case concerns the medical care provided to plaintiff Jabriel Chase for a broken ankle

while he was incarcerated at Western Correctional Institution ("WCI") in Cumberland, Maryland.

On July 16, 2018, plaintiff, who was then self-represented, filed suit pursuant to 42 U.S.C. § 1983.

ECF 1. He subsequently supplemented (ECF 3) and amended (ECF 6) his Complaint, naming as

defendants the Maryland Department of Public Safety and Correctional Services ("DPSCS");

Richard J. Graham Jr., the former Warden of WCI; Bradley O. Butler, formerly WCI's Security

Chief (collectively, the "Correctional Defendants); Wexford Health Sources, Inc. ("Wexford");

and Fatima Hussein, M.D. Several motions to dismiss (ECF 23; ECF 25; ECF 32; ECF 36)

followed, which the Court denied in a Memorandum Opinion (ECF 43) and Order (ECF 44) of

September 27, 2019. Thereafter, the Court appointed pro bono counsel for plaintiff. ECF 46.

Through counsel, plaintiff filed an Amended Complaint against the same defendants. ECF

57. Mr. Graham and Mr. Butler are sued in their individual and official capacities, while Dr.

Hussein is sued only in her individual capacity. *Id.* ¶¶ 11, 12, 14. The Amended Complaint lodges

one claim under § 1983 against all the defendants, alleging inadequate medical care, in violation

of the Eighth and Fourteenth Amendments to the Constitution. *Id.* ¶¶ 61-68. Plaintiff seeks

compensatory damages, punitive damages, attorneys' fees, and costs. *Id.* at 15.

The Correctional Defendants and Wexford answered the Amended Complaint.  ECF 58 (Correctional Defendants); ECF 61 (Wexford).  However, Dr. Hussein has moved to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment, under Fed. R. Civ. P. 56.  ECF 59.  The motion is supported by a memorandum of law (ECF 59-1) (collectively, the "Motion), and Dr. Hussein's Affidavit.  ECF 59-2.  Mr. Chase opposes the Motion (ECF 64) and Dr. Hussein has replied. ECF 65.

The Motion is fully briefed, and no hearing is necessary to resolve it.  *See* Local Rule 105.6. For the reasons that follow, I shall construe the Motion as one to dismiss and I shall grant it.

## I.     Background[1]

## A.  Factual Background

Mr. Chase is incarcerated at WCI, a correctional facility operated by DPSCS.  ECF 57, ¶ 9. At the relevant time, Mr. Graham was the Warden of WCI and Mr. Butler was WCI's Chief of Security. *Id.* ¶¶ 11, 12. Wexford, a Florida corporation headquartered in Pittsburgh, Pennsylvania, provided medical services to inmates at DPSCS facilities, including WCI.  *Id.* ¶ 13.  Wexford's contract with DPSCS expired on December 31, 2018.  *Id.*  Dr. Hussein, a licensed physician, provided medical care to inmates at WCI.  *Id.* ¶ 14; *see also* ECF 59-2.[2]

On April 7, 2018, Mr. Chase suffered an acute ankle fracture while defending a friend who

---

[1] Given the posture of the case, I shall assume the truth of the Complaint's allegations and draw all reasonable inference in plaintiff's favor.  *See* Fed. R. Civ. P. 12(b)(1); *see, e.g.*, *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019). In addition, as discussed, *infra*, the Court "may take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015).

[2] Plaintiff asserts that Dr. Hussein was employed by Alumni Healthcare Staffing, LLC ("Alumni").  ECF 57, ¶ 14.  Dr. Hussein's Affidavit (ECF 59-2) indicates that she worked at WCI from December 5, 2017 through April 12, 2018, through a "placement by Alumni . . . ." *Id.* at 1.

had been attacked in the recreation hall.  *Id.* ¶ 15.  Following the incident, Mr. Chase's left ankle was visibly swollen.  *Id.* ¶ 16.  He was transported by wheelchair to the WCI infirmary.  *Id.*  During the initial visit, Registered Nurse Dennis Martin wrapped Mr. Chase's ankle with an Ace bandage and provided him with crutches for ambulation.  *Id.* ¶ 17.

Following plaintiff's visit to the infirmary, DPSCS sought to place Mr. Chase in segregated housing because of his involvement in a fight.  *Id.* ¶ 18.  Mr. Chase was wheeled to the segregation unit.  *Id.*  Upon arrival, DPSCS staff learned that the bottom tier of the segregation unit was occupied.  So, Mr. Chase was placed in a wheelchair-accessible cell.  *Id.*

Mr. Chase was taken to the infirmary on April 8, 2018, for further evaluation.  *Id.* ¶ 19.  Nurse Practitioner Beverly McLaughlin and other Wexford staff observed that Mr. Chase's left ankle was swollen.  *Id.* ¶ 20.  Mr. Chase reported that he believed his left ankle was broken, that he was in pain, and that his left ankle could not bear any weight.  *Id.*  Wexford medical staff told Mr. Chase to continue using crutches, prescribed a three-day supply of pain medication, and scheduled him for an x-ray.  *Id.*

Mr. Chase received an x-ray on the morning of April 10, 2018.  *Id.* ¶ 22.  Dr. Hussein reviewed the radiology report with Mr. Chase and informed him that his left ankle was indeed fractured.  *Id.* ¶ 23.  Dr. Hussein instructed Mr. Chase to continue ambulating with crutches and recommended that he use a wheelchair when traveling long distances.  *Id.* ¶ 24. However, instead of providing Mr. Chase with a cast, boot, or brace, Dr. Hussein re-wrapped Mr. Chase's ankle with an Ace bandage and splint.  *Id.* ¶ 25.  Further, plaintiff claims that Dr. Hussein failed to submit a medical report directing DPSCS to place Mr. Chase in appropriate housing, *i.e.*, a bottom bunk in a cell located on the bottom tier of a unit.  *Id.*  And, plaintiff alleges that Dr. Hussein told him that he did not need to go to a hospital.  *Id.*

Following the visit, DPSCS transported Mr. Chase back to the segregation unit by wheelchair. *Id.* ¶ 26. However, instead of placing Mr. Chase in a wheelchair-accessible cell, DPSCS allegedly assigned him to an upper-tier cell on the segregation unit. *Id.* In addition, DPSCS took away Mr. Chase's wheelchair. *Id.*

Mr. Chase remained in the upper tier of the segregation unit for the next 180 days. *Id.* ¶ 27. To access his cell, plaintiff "was required to regularly walk up and down the stairs on a broken ankle." *Id.* And, he was required to use a regular shower as opposed to the handicap-accessible showers. *Id.* Plaintiff's makeshift ankle splint "soon disintegrated in the shower, leaving him with no ankle support." *Id.* As a result, plaintiff alleges that he was "required to hobble around his cell to eat, shave, and perform other daily activities, without any support for his broken left ankle." *Id.*

On April 20, 2018, Mr. Chase was evaluated by Dr. Roy J. Carls, an orthopedic specialist designated by Wexford to treat patients with bone injuries. *Id.* ¶ 29. Based on Mr. Chase's x-rays, Dr. Carls recommended that he receive a medical boot and a follow-up x-ray in one month. *Id.* ¶ 30. Despite Dr. Carls telling Mr. Chase that he would recommend a boot, Mr. Chase never received one. *Id.* ¶ 31. Moreover, according to plaintiff, neither Wexford nor DPSCS staff submitted a request for Mr. Chase to receive appropriate housing while he awaited the boot. *Id.*

Mr. Chase was seen by Nurse Practitioner Janette Clark on May 4, 2018. *Id.* ¶ 32. She observed that, based on Dr. Carls's treatment plan from the visit on April 20, 2018, Mr. Chase was to receive a medical boot. *Id.* And, Ms. Clark noted "swelling of Mr. Chase's left ankle and a pronounced limp." *Id.* Therefore, she requested a follow up with an orthopedic specialist and scheduled Mr. Chase for another x-ray. *Id.* Plaintiff alleges that Ms. Clark also submitted an electronic form requesting a boot. *Id.* ¶ 33. Again, however, a boot did not materialize. *Id.*

Plaintiff alleges that he experienced pain throughout May 2018. *Id.* ¶ 34. And, he

continued to walk with a "noticeable limp." *Id.*  Yet, in May 2018, DPSCS took away Mr. Chase's crutches. *Id.*

On May 21, 2018, Mr. Chase underwent another x-ray. *Id.* ¶ 35.  It "showed an acute avulsion fracture, anatomical alignment, and a preserved mortise" in his left ankle. *Id.*

According to plaintiff, on June 6 and 14, 2018, DPSCS "ignored two sick call requests" in which he "reported pain and requested follow-up regarding the medical boot that he had not received." *Id.* ¶ 36.  On June 22, 2018, Mr. Chase underwent another evaluation. *Id.* ¶ 37.  He walked to his appointment without the support of a boot, brace, or crutches. *Id.*  During the visit, Registered Nurse Ashley Chucci observed that Mr. Chase's left ankle was "visibly disfigured and out of proper alignment." *Id.*  An x-ray performed during the visit revealed "increased distance between the medial malleolus and talus at the ankle joint." *Id.* ¶ 38.  But again, Mr. Chase was not provided with a medical boot or appropriate housing. *Id.*  ¶ 37.

The next day, Nurse Practitioner Beverly McLaughlin treated Mr. Chase.  *Id.* ¶ 39. Ms. McLaughlin noted that Ms. Clark had ordered a medical boot for plaintiff.  *Id.*  Ms. McLaughlin told Mr. Chase that she would follow up via email as to why he had not received the medical boot. *Id.*  Mr. Chase also had an appointment on June 24, 2018, during which Ms. Clark "once again noted that Mr. Chase did not receive the medical boot  . . ." *Id.* ¶ 40.

Plaintiff filed a Request for Administrative Remedy on July 1, 2018.  *Id.* ¶ 41. In the Request, Mr. Chase complained that he had not receive a medical boot despite at least one order, three x-rays showing an acute fracture, and a half dozen sick call requests.  *Id.*  Further, Mr. Chase stated that "'due to medical negligence I was informed by Nurse Ashley that my ankle healed improperly.'" *Id.*

Mr. Chase filed two additional sick call requests in connection with his ankle.  One was on

July 5, 2018 and the other was on July 11, 2018. *Id.* ¶ 42. On July 11, 2018, Licensed Practical Nurse Lori Kester evaluated Mr. Chase and provided him with an ankle brace. *Id.* ¶ 43. However, plaintiff claims that Ms. Kester "did not provide [him] with instruction on the use of the ankle support" and that an ankle support is "neither comparable to a medical boot nor able to provide the proper treatment for a fractured ankle." *Id.*

Ms. McLaughlin evaluated plaintiff on July 21, 2018. *Id.* ¶ 45. She observed that Mr. Chase still had not received a medical boot, and prescribed a bottom tier and bottom bunk status for him. *Id.* After the appointment, Ms. McLaughlin allegedly filed the appropriate DPSCS form directing that Mr. Chase receive bottom-tier and bottom-bunk status. *Id.* ¶ 46. Nonetheless, because DPSCS failed to provide Mr. Chase with appropriate housing, he put in another sick call request. *Id.* ¶ 47. When Ms. McLaughlin met with Mr. Chase on August 4, 2018, she told him that she would request that the medical records department resend the medical alert concerning his housing status. *Id.* ¶ 48.

Dr. Carls saw Mr. Chase on August 24, 2018. *Id.* ¶ 49. He found that Mr. Chase had a "'chronic injury of his left ankle that includes shortening of the fibula, a lateral shift of the mortise, and, likely, deltoid incompetency.'" *Id.* ¶ 50. According to Dr. Carls, Mr. Chase required "'a surgical solution,'" and noted that there was "'about a 50 percent chance'" that Mr. Chase would have "a good functioning [left] ankle." *Id.* Dr. Carls also noted that Mr. Chase had likely developed arthritis in his left ankle, *id.*, and that his x-ray results "showed a pattern of widening of the mortise." *Id.* ¶ 51.

On September 4, 2018, Mr. Butler determined that Mr. Chase's Administrative Request for Remedy was "'meritorious,'" and that "'[m]edical staff is to be educated on the importance of ordering supplies in a timely manner to ensure adequate medical care is provided . . . .'" *Id.* ¶ 52

(alteration in original).   Accordingly, Mr. Butler directed that Mr. Chase should be monitored through the sick call process.  *Id.*

In late December 2018 or early January 2019, Mr. Chase finally received the medical boot that Dr. Carls had recommended approximately eight months earlier.  *Id.* ¶ 53.  And, in January 2019, some nine months after the incident, Mr. Chase underwent reconstructive ankle surgery performed by Dr. Carls.  *Id.* ¶ 54.  According to plaintiff, the surgery "would not have been required had [he] received proper treatment initially . . . ."  *Id.*  Following the surgery Dr. Carls closed Mr. Chase's surgical incision with staples.  *Id.* ¶ 55.  Dr. Carls ordered Mr. Chase to stay off his ankle for six weeks and to participate in physical therapy.  *Id.*

Plaintiff alleges that, notwithstanding Dr. Carls's post-operative instructions, he did not receive appropriate care during his recovery.  Mr. Chase received no wound care; his cellmate rebandaged the incision by removing the dirty gauze and re-using old gauze; and Wexford medical staff did not remove Mr. Chase's staples for approximately three weeks, rather than ten days.  *Id.* ¶ 56.  Defendants also failed to provide Mr. Chase with any physical therapy.  *Id.* ¶ 57.

Moreover, Mr. Chase did not receive a post-operative visit with Dr. Carls until August 2019, some seven months after the surgery.  *Id.* ¶ 58.  Dr. Carls informed Mr. Chase that he would continue to suffer from arthritis "for the rest of his life . . . ."  *Id.*  To mitigate the arthritis, Dr. Carls recommended that Mr. Chase undergo arthroscopic surgery to "'clean out the tissue.'"  *Id.*

Plaintiff claims that, "[d]espite Dr. Carls's directives and [his] numerous requests via the sick call process," he has received neither physical therapy nor additional follow-up regarding arthroscopic surgery.  *Id.* ¶ 59.  Further, plaintiff alleges that defendants have failed to provide him with "effective pain medication," notwithstanding his complaints that his current prescriptions "do not alleviate the sharp pains and discomfort in his left ankle."  *Id.* ¶ 60.

## B.  Procedural History

As noted, plaintiff, without counsel, filed suit on July 16, 2018.  ECF 1.  The next day, the Court, observing that Mr. Chase's submission "does not provide sufficient factual information," directed him to supplement his Complaint by August 14, 2018.  ECF 2.  Plaintiff supplemented his complaint on August 3, 2018, naming DPSCS, Wexford, Mr. Graham, and Mr. Butler as defendants.  ECF 3.  On August 15, 2018, plaintiff moved to add Dr. Hussein to the suit, alleging that Dr. Hussein treated him on April 8, 2018.  ECF 3 at 3.  Specifically, plaintiff alleged that Dr. Hussein informed him that his ankle was broken, but "never issued [him] a cast, boot, or ankle brace" and "told [him] that [he] did not need to go to an outside hospital."  *Id.* at 4.  The Court granted the motion by Order of September 6, 2018.  ECF 8.  Plaintiff further supplemented his Complaint on September 7, 2018, providing the Court with a copy of his Request for Administrative Remedy.  ECF 9.

As is relevant here, summons was returned executed as to Dr. Hussein and noted to have been "Delivered, Individual Picked Up at Postal Facility" on April 15, 2019.  ECF 31. However, Dr. Hussein subsequently moved to dismiss for insufficient service of process under Fed. R. Civ. P. 12(b)(5), asserting that plaintiff did not effect service in compliance with either the federal or Maryland rules and, in any event, service occurred outside the 90-day time frame prescribed by Fed. R. Civ. P. 4(m).  *See* ECF 31-1 at 3-8.  The Court denied the motion by Order of May 29, 2019 (ECF 34), concluding that because Mr. Chase was both self-represented and proceeding *in forma pauperis*, there was good cause to extend the service deadline.  Therefore, the Court directed Dr. Hussein to respond within 14 days as to whether she would waive service of process or provide an address at which service could be effected.  ECF 34.  The Court's received Dr. Hussein's waiver of service on June 12, 2019.  ECF 35.

Dr. Hussein moved to dismiss the Complaint or, in the alternative, for summary judgment. ECF 36.  Defendant argued that the Complaint "simply fails to allege facts that establish [that she] was deliberately indifferent to a serious medical need" and, as such, she should be dismissed from the suit, pursuant to Fed. R. Civ. P. 12(b)(6).  ECF 36-1 at 8.  Further, defendant argued that, based upon plaintiff's allegations and medical records, there is no genuine dispute as to whether Dr. Hussein was deliberately indifferent to plaintiff's serious medical need," and therefore dismissal was appropriate under Fed. R. Civ. P. 56.  *Id*. at 9.  Dr. Hussein submitted an Affidavit in support of her motion.  ECF 36-2.

Wexford and the Correctional Defendants moved separately to dismiss or, alternatively, for summary judgment.  ECF 23 (Wexford); ECF 25 (Correctional Defendants).  In response, plaintiff, who was then self-represented, filed a hand-written omnibus opposition.  ECF 38.  Wexford and Dr. Hussein replied.  ECF 40 (Wexford); ECF 41; ECF 42 (Dr. Hussein).

As indicated, I denied defendants' motions in a Memorandum Opinion (ECF 43) and Order (ECF 44) of September 17, 2019.  I stated, in part, ECF 43 at 21:

> Viewing the evidence in the light most favorable to Chase, I cannot find that defendants are entitled to judgment as a matter of law at this time. Objectively, it appears undisputed that Chase suffered a serious injury to his ankle, which eventually required corrective surgery. Subjectively, defendants recognized that Chase needed an ankle boot as early as April 20, 2018, yet they failed to either provide it or ensure it was available.

On October 2, 2019, I appointed counsel for Mr. Chase (ECF 46) and, through counsel, plaintiff filed an Amended Complaint on January 30, 2020.  ECF 57.  Of import here, the Amended Complaint contains one count that is lodged against all defendants, titled "Violation of Civil Rights Under Color of State Law, 42 U.S.C. § 1983 Cruel and Unusual Punishment under the Eighth and

Fourteenth Amendments to the U.S. Constitution." ECF 57 at 13.[3]

The essence of plaintiff's claim is that, despite being aware of Mr. Chase's broken ankle, "Defendants and their actual and/or apparent agents, servants, and/or employees" failed to provide him "with constitutionally required medical care, despite numerous medical professionals noting the medical necessity of such care." *Id.* ¶ 66. According to plaintiff, "Defendants' failures were intentional, reckless, and/or deliberately indifferent." *Id.* "Defendants' inaction," plaintiff alleges, "affirmatively caused [him] substantial and unnecessary permanent injury." *Id.* ¶ 67

Dr. Hussein's Motion followed on January 30, 2020. ECF 59.

## II.    Standard of Review

Defendant's Motion is styled as a "Motion to Dismiss The Amended Complaint Or, In the Alternative, For Summary Judgment." ECF 59. A motion styled in the alternative implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). But, when the

---

[3] The suit does not include a claim for medical malpractice. Moreover, the Due Process Clause of the Fourteenth Amendment is generally applicable only to pretrial detainees, whereas the Eighth Amendment applies to convicted prisoners. *See, e.g.*, *Hill v. Nicodemus*, 979 F.2d 987, 990-91 (4th Cir. 1992); *see also Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001). However, whether an inmate is a convicted prisoner or a pretrial detainee, "the standard in either case is the same—that is, whether a government official has been 'deliberately indifferent to any of his serious medical needs.'" *Brown*, 240 F.3d at 388 (citation and alteration omitted).

movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[4]

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366 (3d ed. 2018). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.*

Summary judgment ordinarily is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011); *see Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015). As the Fourth Circuit has said, when a district judge rules on a summary judgment motion prior to discovery, it is akin to "for[cing] the non-moving party into a fencing

---

[4] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

match without a sword or mask." *McCray v. Md. Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2014)); *accord Putney v. Likin*, 656 F. App'x 632, 639 (4th Cir. 2016) (per curiam).

However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

"To justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted), *rev'd on other grounds sub. nom. Gardner v. Ally Fin., Inc.*, 514 F. App'x. 378 (4th Cir. 2013) (per curiam). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874 (4th Cir. 2019); *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x 274 (4th Cir. 2008) (per curiam), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party who fails to file a Rule 56(d) affidavit does so at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted).  But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature.

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit.  *Id.* (internal citations omitted).  According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'"  *Id.* at 244-45 (internal citations omitted).

Mr. Chase has not filed a Rule 56(d) affidavit.  And, he does not address defendant's arguments for summary judgment in opposing the Motion.  As discussed, *infra,* his central contention is that the law of the case doctrine precludes consideration of defendant's arguments, regardless of whether the Motion is assessed under Rule 12(b)(6) or Rule 56.  Moreover, this is not a case where discovery is unnecessary.  Indeed, after the Motion was filed, the parties submitted, and the Court entered, a protective order concerning protected health information in order to "expedite the flow of discovery . . . ."  ECF 63.  Therefore, it would be inappropriate to convert the motion into one for summary judgment, absent an opportunity for discovery.  *See*

*McCray*, 741 F.3d at 483; *Harrods*, 302 F.3d at 245.  Accordingly, I shall construe the Motion as one to dismiss under Rule 12(b)(6).

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6).  *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Paradise Wire & Cable*, 918 F.3d at 317; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2).  *Twombly*, 550 U.S. at 555.  Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014)

(per curiam).  But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief.  *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).  If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient.  *Twombly*, 550 U.S. at 555.  "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief.  *Iqbal*, 556 U.S. at 678.  Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely."  *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'"  *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting  *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015).  However, "a court is not required to accept legal conclusions drawn from the facts."  *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought.  *A*

*Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards*, 178 F.3d at 243). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[] *on the face of the complaint.*'" *Goodman,* 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst,* 4 F.3d at 250).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed. v. Town of Gilbert*, ___ U.S. ___, 135 S. Ct. 2218 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for

summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167. Of import here, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Id.* Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* at 166 (citations omitted); *see also Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019); *Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 558 (2017); *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal

rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) ) (emphasis in original) (citation omitted); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

In addition, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). However, under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

As noted, the Motion is supported by one exhibit. ECF 59-2 is an Affidavit submitted by Dr. Hussein. The Affidavit is not integral to plaintiff's claim, it is not referenced in the Amended Complaint, nor is the Affidavit a publicly available document. Therefore, because the Affidavit contains facts that are "beyond the pleadings," it "cannot be considered on a Rule 12(b)(6) motion." *E.I. Du Pont De Nemours & Co.*, 637 F.3d at 449. Accordingly, I shall not consider Dr. Hussein's Affidavit in resolving the Motion.

### III.    Discussion

Dr. Hussein seeks dismissal of the Amended Complaint principally on shotgun pleading grounds. *See* ECF 59-1 at 7-9. According to defendant, the Amended Complaint's singular cause of action deprives Dr. Hussein of fair notice of the particular unconstitutional acts for which she is

allegedly liable, in violation of Fed. R. Civ. P. 8.  *See id.*  Independently, Dr. Hussein contends that the Amended Complaint fails to allege plausibly that she was deliberately indifferent to Mr. Chase's medical needs.  *Id.* at 9-11.

Plaintiff counters that the Amended Complaint "satisfies the low threshold of Rule 8."  ECF 64 at 4.  According to plaintiff, the Amended Complaint makes it "obvious which claim Defendant Hussein must defend" because it sets forth specific facts detailing Dr. Hussein's conduct.  *Id.* at 5. Moreover, plaintiff invokes the law of the case doctrine, asserting that the Motion is barred by this Court's prior ruling that plaintiff stated a viable Eighth Amendment claim against Dr. Hussein. *See id.* at 6-9.

I shall first consider whether the law of the case doctrine bars the Motion.  Concluding that the doctrine does not apply here, I proceed to examine whether the Amended Complaint states an Eighth Amendment claim against Dr. Hussein.  Because I find that the Amended Complaint fails to state a claim as to Dr. Hussein, I shall dismiss her from the suit.

## A.  Law of The Case Doctrine

The law of the case doctrine serves as a rule of decision.  The doctrine  "generally provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'"  *Musacchio v. United States*, ___ U.S. ___, 136 S. Ct. 709, 716 (2016) (quoting *Pepper v. United States*, 562 U.S. 476, 506 (2011)); *accord Arizona v. California*, 460 U.S. 605, 618 (1983); *Graves v. Lioi*, 930 F.3d 307, 318 (4th Cir. 2019); *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017); *TFWS, Inc. v. Franchot*, 572 F.3d 186, 191 (4th Cir. 2009).  Put differently, a legal decision, once made, should ordinarily remain the law throughout the life of the case.  *See* 18B CHARLES A. WRIGHT, ARTHUR R. MILLER, EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4478 (2d ed. 2019).

The doctrine's effect is to bar a party from resurrecting issues that were previously decided or "'decided by necessary implication.'" *United States v. Lentz*, 524 F.3d 501, 528 (4th Cir. 2008) (quoting *Sejman v. Warner-Lambert Co., Inc.*, 845 F.2d 66, 69 (4th Cir. 1988)).  In so doing, the law of the case doctrine advances the interests of efficiency and judicial economy.  *Christianson v. Colt Indus. Oper. Corp.*, 486 U.S. 800, 816 (1988) (observing that the doctrine safeguards the "efficiency of the judicial process by protecting against the agitation of settled issues"); *Sejman*, 845 F.2d at 69 (recognizing that "courts could not perform their duties 'satisfactorily and efficiently'" if issues "'once considered and decided . . . were to be litigated anew in the same case'") (citation omitted).  Moreover, the doctrine bolsters public confidence in the judiciary by providing parties with consistency and finality.  *See United States v. Philip Morris USA Inc.*, 801 F.3d 250, 257 (D.C. Cir. 2015) (noting that the law of the case doctrine, "reflects the understanding that 'inconsistency is the antithesis of the rule of law'") (citation and alteration omitted); *see also* WRIGHT, MILLER & COOPER, *supra*, § 4478 (identifying consistency as one of the doctrine's salutary aims).

The doctrine has two components: a vertical branch, known as the "mandate rule," and a horizontal branch.  *See United States v. Matthews*, 643 F.3d 9, 13 (1st Cir. 2011).  The mandate rule, which flows from the hierarchal nature of our judicial system, provides that "'once a case has been decided on appeal and a mandate issued, the lower court may not deviate from that mandate but is required to give full effect to its execution.'"  *Mangum v. Hallembaek*, 910 F.3d 770, 776 (4th Cir. 2018) (quoting *Invention Submission Corp. v. Dudas*, 413 F.3d 411, 414 (4th Cir. 2005)).  The mandate rule is, as its name suggests, mandatory; the trial court cannot depart from the appellate court's ruling, "'except in rare circumstances.'"  *Mangum*, 910 F.3d at 776 (quoting

*United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993)); *see also* WRIGHT, MILLER & COOPER, *supra*, § 4478.3.

In contrast, the horizontal aspect of the doctrine "expresses the practice of courts generally to refuse to reopen what has been decided" by the court in the same case. *Messenger v. Anderson*, 225 U.S. 436, 444 (1912) (Holmes, J.). For instance, courts regularly decline to revisit transfer decisions rendered by the transferor court. *See Christianson*, 486 U.S. at 816 (recognizing that a contrary rule would "threaten to send litigants into a vicious circle of litigation"). And, as the Fourth Circuit has explained, the law of the case doctrine applies to interlocutory rulings, notwithstanding the fact that such decisions are amenable to revision, pursuant to Fed. R. Civ. P. 54. *See Carlson*, 856 F.3d at 325 (holding that "a court may revise an interlocutory order under the same circumstances in which it may depart from the law of the case").[5]

Unlike the mandate rule, the parallel application of the law of the case doctrine "is not an 'inexorable command' but rather a prudent judicial response to the public policy favoring an end to litigation." *Sejman*, 845 F.2d at 68 (citation omitted); *see Christianson*, 486 U.S. at 817 (making clear that the doctrine does not limit a court's power); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983) (noting that "every order short of a final decree is subject to reopening at the discretion of the district judge"). The doctrine, when applied by a trial court to

---

[5] There appears to be a split of authority as to whether the law of the case doctrine applies to interlocutory orders. Like the Fourth Circuit, the Seventh and Fifth Circuits have applied the doctrine to non-final rulings, although they have cautioned that it is merely a presumption against revising a prior ruling. *See Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012); *United States v. O'Keefe*, 128 F.3d 885, 891 (5th Cir. 1997). Other circuits, however, have held that the law of the case doctrine has no application to interlocutory rulings. *See Keepseagle v. Perdue*, 856 F.3d 1039, 1048 (D.C. Cir. 2017); *United States ex rel. Petratos v. Genentech, Inc.*, 855 F.3d 481, 493 (3d Cir. 2017); *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011); *First Union Nat'l Bank v. Pictet Overseas Tr. Corp.*, 477 F.3d 616, 620 (8th Cir. 2007); *Perez-Ruiz v. Crespo-Guillen*, 25 F.3d 40, 42 (1st Cir. 1994).

its own rulings, is thus "malleable," and the court should be mindful of the need to "balance the interests of correctness and finality." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003); *see Christianson*, 486 U.S. at 817; WRIGHT, MILLER & COOPER, *supra*, § 4478.5 ("The force of law-of-the-case doctrine is affected by the nature of the first ruling and by the nature of the issues involved.").

That said, courts should be "loathe" to revisit settled decisions of law absent "extraordinary circumstances." *Christianson*, 486 U.S. at 817. Accordingly, the Fourth Circuit has instructed, *Lentz*, 524 F.3d at 528 (internal quotation marks and citation omitted):

> Under the law of the case doctrine, as a practical matter, once the decision of an appellate court establishes the law of the case, it must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal unless: (1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice.

*See also Carlson*, 856 F.3d at 325; *Everett v. Pitt Cty. Bd. of Educ.*, 788 F.3d 132, 142 (4th Cir. 2015); *Sejman*, 845 F.2d at 68. In this setting, the Fourth Circuit has colorfully explained that to be clearly erroneous the decision cannot be "'just maybe or probably wrong; it must . . . strike [the court] as wrong with the force of a five-week-old, unrefrigerated dead fish.'" *TFWS, Inc.*, 572 F.3d at 194 (first alteration in original) (citation omitted). In short, the decision must be "'dead wrong.'" *Id.* (citation omitted).

Plaintiff contends that the law of the case doctrine bars Dr. Hussein's Motion "because this Court has already concluded that Defendant Hussein's attacks on a less detailed version of the Amended Complaint did not merit dismissal pursuant to Rule 12(b)(6)." ECF 64 at 6. None of the doctrine's exceptions apply, Mr. Chase contends, because the Motion "merely rehashes" Dr. Hussein's previous arguments. *Id.* at 7. In response, Dr. Hussein maintains that the doctrine is

unavailing because the Amended Complaint supersedes plaintiff's original complaint, is evaluated under different pleading standards, and contains new factual allegations. *See* ECF 65 at 6.

To my knowledge, the Fourth Circuit has not addressed the doctrine's applicability to a motion to dismiss an amended complaint. Some courts have held that an amended complaint is subject to the law of the case doctrine where there is little daylight between the pleadings. *See Welsowski v. Zugibe*, 96 F. Supp. 3d 308, 316-17 (S.D.N.Y. 2015) (collecting cases), *aff'd*, 626 F. App'x 20 (2d Cir. 2015). In my view, the case of *Askins v. United States Department of Homeland Security*, 899 F.3d 1035 (9th Cir. 2018), relied on by Dr. Hussein, offers a better approach.

In *Askins*, the plaintiffs, immigration advocates, brought a First Amendment challenge against a Customs and Broder Protection policy requiring advanced permission to photograph ports of entry. *Id.* at 1038. The district court dismissed the initial complaint with leave to amend. *Id.* The plaintiffs refiled an amended complaint, but the district court ruled that the plaintiffs' claims were barred by the law of the case doctrine. *Id.*

The Ninth Circuit reversed. *Id.* When a plaintiff files an amended complaint, "the new complaint is the only operative complaint before the district court." *Id.* at 1043. As a result, "when an original complaint is dismissed without prejudice, the filing of an amended complaint does not ask the court to reconsider its analysis of the initial complaint." *Id.* Rather, "[t]he amended complaint is a new complaint, entitling the plaintiff to judgment on the complaint's own merits; we do not ask whether the plaintiff is "precluded" or "barred" by the prior ruling." *Id.* Thus, while the district court remains "free to follow the same reasoning and hold that the amended claims suffer from the same legal insufficiencies," the "filing of an amended complaint requires a new determination." *Id.*

I find *Askins* to be persuasive.  It is well established that "a properly filed amended complaint supersedes the original one," thereby becoming the operative filing.  *Fawzy v. Wauquiez Boats SNC*, 873 F.3d 451, 455 (4th Cir. 2017) (citing *Young v. City of Mt. Ranier*, 238 F.3d 567, 573 (4th Cir. 2001)).  In such a case, the amended complaint "renders the original complaint 'of no effect.'"  *Fawzy*, 873 F.3d at 455 (quoting *Young*, 238 F.3d at 573).  It follows then that when a defendant moves for dismissal of an amended complaint, the analysis wholly concerns the adequacy of the allegations contained in that filing.

To be sure, the reasoning of a court's earlier ruling may apply with equal force to an amended complaint.  But, the mere existence of the prior ruling does not compel the dismissal of the amended complaint.  Indeed, were amended complaints subject to the law of the case doctrine they would become exceedingly rare following dismissal of a complaint without prejudice: the amended complaint would survive challenge only if the plaintiff could establish a change in the law, new facts, or a fatal defect in the court's initial ruling.  Such a rule is irreconcilable with Fed. R. Civ. P. 15(a)(2), which directs courts to "freely give leave [to amend pleadings] when justice so requires."  *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 769 (4th Cir. 2011).  Therefore, I conclude that the law of the case doctrine does not foreclose consideration of Dr. Hussein's Motion.

Moreover, the Fourth Circuit has cautioned against applying the law of the case doctrine where the previously litigated issue arises in a different procedural posture.  *See Graves*, 930 F.3d at 318 (explaining that court's ruling on a motion to dismiss does not constrain the court at the motion for summary judgment stage where discovery has unearthed new facts).  To be sure, both the Motion and Dr. Hussein's first motion to dismiss are predicated on Rule 12(b)(6).  *Compare* ECF 59-1 at 9-11, *with* ECF 36-1 at 8.  However, the complaint and Amended Complaint were

subject to different pleading standards.  The original complaint was evaluated under the liberal

standard afforded to self-represented litigants.  *See* ECF 43 at 9 (citing *Erickson v. Pardus*, 551

U.S. 89, 94 (2007)).  In contrast, plaintiff filed his Amended Complaint through counsel and so it

receives no deference.

Beyond the different pleading standards, the Amended Complaint adds clarifying detail

and new factual allegations.  In his initial Complaint, plaintiff alleged only that Dr. Hussein

informed him that his ankle was broken, "never issued [him] a cast, boot, or ankle brace," and

"told [him] that [he] did not need to go to an outside hospital." ECF at 4.  The Amended Complaint

expands on these allegations.  *See* ECF 57, ¶¶ 23-25.  And, it claims that Dr. Hussein failed to

ensure that plaintiff received appropriate housing.  *Id.* ¶ 25.  Of course, because "different facts

will lead to a different legal analysis," the doctrine does not apply where the factual milieu has

expanded since the court's initial ruling.  *Graves*, 930 F.3d at 318.

As noted, the law of the case doctrine is not an unyielding diktat, but a flexible tool of

judicial administration.  Here, in light of plaintiff's Amended Complaint, the differing pleading

standards, and new factual allegations, I shall decline to apply the doctrine to the Motion.

### B.  Failure to State a Claim

#### 1.  Section 1983 Generally

Pursuant to 42 U.S.C. § 1983, a plaintiff may file suit against any person who, acting under

color of state law, deprives her "of any rights, privileges, or immunities secured by the Constitution

and laws" of the United States.  *See, e.g.*, *Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Owens

v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom. Balt.

City Police Dep't v. Owens*, 575 U.S. 983 (2015).  It "'is not itself a source of substantive rights,'

but provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*,

510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017). Stated otherwise, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

"The first step in any such claim is to pinpoint the specific right that has been infringed." *Safar*, 859 F.3d at 245. To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Davison v. Randall*, 912 F.3d 666, 679 (4th Cir. 2019); *Loftus v. Bobzien*, 848 F.3d 278, 284-85 (4th Cir. 2017); *Wahi v. Charleston Area Med. Ctr., Inc*., 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997).

The phrase "under color of state law" is an element that " 'is synonymous with the more familiar state-action requirement' for Fourteenth Amendment claims, 'and the analysis for each is identical.'" *Davison*, 912 F.3d at 679 (quoting *Philips v. Pitt Cty. Mem'l Hosp*., 572 F.3d 176, 180 (4th Cir. 2009)); *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982). A person acts under color of state law "only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Polk Cty. v. Dodson*, 454 U.S. 312, 317-18 (1981) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *see also Philips*, 572 F.3d at 181 ("[P]rivate activity will generally not be deemed state action unless the state has so dominated such activity as to convert it to state action: Mere approval of or acquiescence in the initiatives of a private party is insufficient.") (citations and internal quotation marks omitted).

Of import here, § 1983 liability has been extended to private entities operating under color of state law, including private prison health care providers. *See, e.g.*, *West*, 487 U.S. at 49; *Polk*, 454 U.S. at 320; *Rodriguez v. Smithfield Packing Co., Inc.*, 338 F.3d 348, 355 (4th Cir. 2003); *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999). Thus, Wexford and its staff may be subject to suit under § 1983. *See Rodriguez*, 338 F.3d at 355 (observing that principles of § 1983 municipal liability "'apply equally to a private corporation'" acting under color of state law) (citation omitted).

However, § 1983 also requires a showing of personal fault based upon a defendant's personal conduct. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights). In other words, there is no respondeat superior liability under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

### 2.   Eighth Amendment

The Eighth Amendment protects the rights of convicted prisoners. *Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001) ("'[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.'") (quoting *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977)). It prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); s*ee also Hope v.*

*Pelzer*, 536 U.S. 730, 737 (2002); *Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016). And, "[i]t is beyond debate that a 'prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment.'" *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019) (citation omitted).

"Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)); *accord Anderson v. Kingsley*, 877 F. 3d 539, 543 (4th Cir. 2017). The protection conferred by the Eighth Amendment imposes on prison officials an affirmative "obligation to take reasonable measures to guarantee the safety of . . . inmates." *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986); *see Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016).

In general, the deliberate indifference standard applies to cases alleging failure to safeguard the inmate's health and safety, including failure to protect inmates from attack, inhumane conditions of confinement, and failure to render medical assistance. *See Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017). The deliberate indifference standard is analyzed under a two-pronged test: "(1) the prisoner must be exposed to 'a substantial risk of serious harm,' and (2) the prison official must know of and disregard that substantial risk to the inmate's health or safety." *Thompson*, 878 F.3d at 97-98 (quoting Farmer, 511 U.S. at 834, 837-38); *see Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209 (4th Cir. 2017). The Fourth Circuit has characterized the applicable standard as an "exacting" one. *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).

28

For a plaintiff prisoner to prevail in a suit alleging the denial of adequate medical care, the defendant's actions or inaction must amount to deliberate indifference to a serious medical need. *See Estelle*, 429 U.S. at 106; *Lightsey*, 775 F.3d at 178; *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). A "'serious . . . medical need' " is " 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko*, 535 F.3d at 241 (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)); *see Scinto*, 841 F.3d at 228.

Deliberate indifference to a serious medical need requires proof that, objectively, the plaintiff was suffering from a serious medical need and that, subjectively, the defendant was aware of the need for medical attention but failed either to provide it or to ensure that the needed care was available. *See Farmer*, 511 U.S. at 837; *see also Gordon*, 937 F.3d at 357; *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018); *King*, 825 F.3d at 219. As the *Heyer* Court put it, "The plaintiff must show that he had serious medical needs, which is an objective inquiry, and that the defendant acted with deliberate indifference to those needs, which is a subjective inquiry." *Heyer*, 849 F.3d at 209-10.   Of relevance here, "[t]he necessary showing of deliberate indifference can be manifested by prison officials in responding to a prisoner's medical needs in various ways, including intentionally *denying or delaying* medical care, or intentionally *interfering* with prescribed medical care." *Formica v. Aylor*, 739 F. App'x 745, 754 (4th Cir. 2018) (emphasis in *Formica*).

In the context of a claim concerning medical care, the subjective component of the standard requires a determination as to whether the defendant acted with reckless disregard in the face of a serious medical condition, *i.e.*, with "a sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298; *see Farmer*, 511 U.S. at 839-40; *Scinto*, 841 F.3d at 225.   As the *Farmer* Court explained,

511 U.S. at 837, reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." Put another way, "it is not enough that the defendant *should* have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Lightsey*, 775 F.3d at 178 (emphasis in *Lightsey*); *see Farmer*, 511 U.S. at 839-40; *Anderson v. Kingsley*, 877 F.3d 539, 544 (4th Cir. 2017).

"Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The Fourth Circuit has said: "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997); *see also Young v. City of Mount Ranier*, 238 F.3d 567, 575-76 (4th Cir. 2001) ("Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care.").

Generally, "[a]n actionable deliberate-indifference claim does not require proof that the plaintiff suffered an actual injury. Instead, it is enough that the defendant's actions exposed the plaintiff to a 'substantial *risk* of serious harm.'" *Heyer*, 849 F.3d at 210 (quoting *Farmer*, 511 U.S. at 837) (emphasis added in *Heyer*); *see Thompson*, 878 F.3d at 97-98. But, in a case involving a claim of deliberate indifference to a serious medical need, the inmate must show a "significant

injury." *Danser v. Stansberry*, 772 F.3d 340, 346 n.8 (4th Cir. 2014); *see De'lonta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013).[6]

The Supreme Court recognized in *Farmer*, 511 U.S. at 844, that "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." The Constitution requires prison officials to ensure "reasonable safety," a standard that acknowledges prison officials' "unenviable task of keeping [sometimes] dangerous [people] in safe custody under humane conditions[.]" *Id.* at 845 (citations and quotation marks omitted). Accordingly, "prison officials who act reasonably cannot be found liable" under the deliberate indifference standard. *Id.*; *see also Short v. Smoot*, 436 F.3d 422, 428 (4th Cir. 2006) (finding that an officer who responds reasonably to a danger facing an inmate is not liable under the deliberate indifference standard, even when further precautions could have been taken but were not); *Brown*, 240 F.3d at 390-91.

Notably, deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness" and, "as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Lightsey*, 775 F.3d at 178; *see also Scinto*, 841 F.3d at 225; *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975). In *Estelle*, 429 U.S. at 106, the Supreme Court said: "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."

---

[6] In the context of an excessive force claim "significant injury" is not required. *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010) (per curiam); *Danser*, 772 F.3d at 346 n.8.

What the Court said in *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999), *cert. denied*, 529 U.S. 1067, (2000), is also pertinent: "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences . . . ." *See also Young*, 238 F.3d at 576 (stating that a Fourteenth Amendment deliberate inference claim requires more than a showing of "mere negligence"); *Johnson v. Quinones*, 145 F.3d 164, 166 (4th Cir. 1998) ("[A]ny negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference.").

Although the deliberate indifference standard "'entails more than mere negligence . . . it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *King*, 825 F.3d at 219 (quoting *Farmer*, 511 U.S. at 835). A plaintiff can meet the subjective knowledge requirement through direct evidence of a prison official's actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "'that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer*, 511 U.S. at 842); *see Gordon*, 937 F.3d at 357; *Scinto*, 841 F.3d at 225. And, if a risk is obvious, a prison official "cannot hide behind an excuse that he was unaware of a risk." *Brice*, 58 F.3d at 105.

However, an inmate's mere disagreement with medical providers as to the proper course of treatment does not support a claim under the deliberate indifference standard. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Wester v. Jones*, 554 F.2d 1285 (4th Cir. 1977). Rather, a prisoner-plaintiff must show that the medical provider failed to make a sincere and reasonable

32

effort to care for the inmate's medical problems.  *See Startz v. Cullen*, 468 F.2d 560, 561 (2d Cir. 1972); *Smith v. Mathis*, PJM-08-3302, 2012 WL 253438, at * 4 (D. Md. Jan. 26, 2012), *aff'd*, 475 F. App'x 860 (4th Cir. 2012); *Lopez v. Green*, PJM-09-1942, 2012 WL 1999868, at * 2 (D. Md. June 3, 2012); *Robinson v. W. Md. Health Sys. Corp*., DKC-10-3223, 2011 WL 2713462, at *4 (D. Md. July 8, 2011).  And, the right to medical treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977).

### 3.  Analysis

The Amended Complaint, viewed in the light most favorable to plaintiff, does not plausibly allege that Dr. Hussein was deliberately indifferent to Mr. Chase's medical needs.  According to the Amended Complaint, plaintiff received care from seven different medical professionals and had no less than ten medical appointments.  However, plaintiff alleges that Dr. Hussein treated him only once, three days after he injured his ankle.  ECF 57, ¶¶ 22-25.

Specifically, the Amended Complaint alleges that Dr. Hussein reviewed Mr. Chase's x-rays on August 10, 2018, during which she noted that he "suffered an acute left ankle fracture." *Id.* ¶ 23.  Dr. Hussein then allegedly "instructed Mr. Chase to continue to use crutches . . . refrain from bearing weight on the fractured ankle . . . . [and] also recommended the use of a wheelchair for moving long distances." *Id.* ¶ 24.  Plaintiff claims that Dr. Hussein "re-wrapped Mr. Chase's ankle with an Ace bandage and splint," but "did not give Mr. Chase a cast, boot, or brace." *Id.* ¶ 25.  Nor did she refer Mr. Chase to the hospital. *Id.*  Further, plaintiff alleges that Dr. Hussein failed to "submit any medical health reports that would have provided for an appropriate housing

assignment for [him] given his condition, such as housing in the bottom tier of the segregation unit." *Id.*

These allegations readily support the fact that Mr. Chase's broken ankle constituted a serious medical need. *See Brown v. Hughes*, 894 F.2d 1533, 153-39 (11th Cir. 1990) (per curiam) (finding that a broken foot was a serious medical need and "a deliberate delay on the order of hours in providing care for a serious and painful broken foot is sufficient to state a constitutional claim"); *Jones v. Hefner*, 1:09CV76SNLJ, 2011 WL 1086059, at *4 (E.D. Mo. Mar. 22, 2011) (noting that defendants concede that a broken foot is a serious medical need); *but see Galegeo v. Scott*, 3:10-cv-00758-ECR-VPC, 2011 WL 6752563, at *3 (D. Nev. Sept. 8, 2011) (collecting cases finding that chronic ankle pain and arthritis were not a serious medical need). And, based on the allegations, the Court can easily infer that Dr. Hussein was aware of plaintiff's condition; she allegedly examined him, reviewed his x-rays, and diagnosed his ankle fracture.

However, plaintiff has not set forth any facts showing that Dr. Hussein acted with deliberate indifference to a serious medical need. Plaintiff saw Dr. Hussein on only one occasion – August 10, 2018. There are no allegations that Mr. Chase had any interaction with Dr. Hussein following the one visit on August 10, 2018. Plaintiff alleges that Dr. Hussein reviewed his x-rays, wrapped his ankle in a bandage, instructed him to use crutches, encouraged him to use a wheelchair when traveling long distances, and failed to send him to the hospital. To be sure, the Fourth Circuit has recognized that the mere prescription of medication and advice does not foreclose a § 1983 claim. *See Perry v. Meade*, 728 F. App'x 180, 182 (4th Cir. 2018). But, plaintiff does not allege that Dr. Hussein knew that Mr. Chase had not received a boot or brace, did not have access to a wheelchair, or was placed in top-tier housing. And, none of the allegations support the inference of deliberate indifference. To the contrary, they concern matters of professional judgment.

At most, plaintiff's allegations amount to a claim of negligence or medical malpractice. And, as noted, acts of negligence fall far short of the deliberate indifference standard. *Estelle*, 429 U.S. at 106.  Indeed, courts considering the kind of injury at issue here have found that far more egregious behavior did not suffice to state a plausible Eighth Amendment violation.  *See, e.g., Raheem v. Stout,* 101 F. App'x 603, 606 (6th Cir. 2004) (prisoner failed to state an inadequate medical care claim for broken ankle that was not seen by a doctor for eight days, not x-rayed for a month).  Likewise, Dr. Hussein's alleged failure to ensure that plaintiff received bottom-tier, bottom-bunk status is insufficient to demonstrate deliberate indifference.  *See Shover v. Chestnut*, 798 F. App'x 760 (4th Cir. 2020) (per curiam) (doctor's failure to recommend wheelchair-accessible housing was not deliberate indifference).

Accordingly, because the Amended Complaint does not state an Eighth Amendment claim against Dr. Hussein, I shall dismiss her from the suit.

## IV.   Conclusion

For the foregoing reasons, I shall grant the Motion (ECF 59).  An Order follows, consistent with this Memorandum Opinion.


Date: April 20, 2020                                    _____/s/_____

                                                                    Ellen L. Hollander
                                                                    United States District Judge